FILED IN CLERKS OFFICE
2019 OCT -2 PM 2: 33
U.S. DISTRICT COURT DISTRICT OF MASS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Amadeu Mendes Semedo**
A 200 809 789
Petitioner

**V.**

**Thomas M Hodgson**
Warden of
Bristol County Sheriffs Office
Respondent

**PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. 2241, BY A PERSON SUBJECT TO INDEFINITE IMMIGRATION DETENTION**

## BACKGROUND

Petitioner Amadeu Mendes Semedo, hebery petition this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention, and to enjoin Petitioner's continued unlawful detention by Respondent. In support of this petitions and complaint for injunctive relief, Petitioner alleges as follow:

## PARTIES

**1**. Petitioner, **Amadeu Mendes Semedo,** is a native and citizen of Cape Verde. Petitioner was taken into custody on August 21 2018 after had received a order of removal from United States on july 9 2012. Petitioner is currently detained at Bristol County Sheriff Office. Petitioner has been continuously detained by Bureau of Immigration and Customs Enforcement (ICE) for over thirteen months.

**2.** Respondent is the Warden of Bristol County Sheriff Office. As such, Respondent is responsible for the operation of the Bristol County Sheriff Office, where Petitioner is detained. Because ICE contracts with state prisons such as Bristol County Sheriff Office to house immigration detainees such as Petitioner, Respondent has immediate physical custody of the Petitioner.

## JURISDITION

**3.** This action arises under the constitution of the United States, 28 U.S.C. 2242(c)(1), and the Immigration and National Act, as amended ("INA"), 8 U.S.C. 1101 et seq. This Court has subject matter jurisdiction under 28 U.S.C. 2241, Art. I 9, c1. 2 of the

United States Constitution ("Suspension Claude"), and 28 U.S.C.1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See Zadvydas v. Davis, 533 U.S. 678, 688 (2001)("We conclude that 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challanges to post-removal-period detention."); INS v. St Cyr, 533 U.S. 289, 301 (2001)("at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that its protection have been strongest.") Aguilarv. United States Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F. 3d 1, 11 (1st Cir. 2007) ("district court retain jurisdiction over challenges to the legality of detention in the immigration contest."); Clark v. Martinez, 453 U.S. 371 (2005) (holding that Zadvydas applies to aliens found inadmissible as well as removable).

## VENUE

**4.** Venue lies in the District of Massachusetts because Petitioner is currently detained in the territorial jurisdiction of this Court, at the Bristol County Sheriff Office, 28 U.S.C. 1391.

## EXHAUSTION OF REMEDIES

**5.** Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by of this judicial action. After Supreme Court decision in Zadvydas, the Department of Justice issued regulations governing the custody of aliens ordered removed. See 8 C.F.R. 241.4. Petitioner received final order of removal on July 12 2012. At his "90 days" custody review on or about November 17 2018, ICE decided to continued his detention. Subsequently, in a decision dated February 17 2019, ICE's Headquaters Post-Detention Unit ("HQPDU") informed Petitioner that it would continue to keep him in custody despite having been detained for six-months after a final order of removal. The custody review regulations do not provide appeal from a HQPDU custody review decision. See 8 C.F.R. 241.4 (d).

**6.** No statutory exhaustion requirements apply to Petitioner's claims of unlawful detention. On July 15 2019, Petitions filed a petition for writ of habeas corpus. The district court dismissal for non fee payment. However, more than two months have passed since Petitioner's habeas corpus petition was filed and Petitioner still remain detained without any indication from the government of the United States or Cape Verde that Petitioner's repatriation is reasonable foreseeable. A new habeas petition is proper in light of these new facts.

## STATEMENT OF FACTS

**7.** Petitioner Amadeu Mendes Semedo, was born in Cape Verde on March 30 1965. Petitioner is a citizen and national of Cape Verde, came to the United States at the age twenty two on a visitor's visa in December, 1988. Petitioner arrived in Boston Massachusetts, with Capeverdean passaport, and he never lived in another country before coming to United States.

Petitioner overstayed his visa and he was served with a Notice to Appear, alleging that he was subject to removal from the United States solely on that overstay basis. Petitioner is now fifty four years of age, and been married with Tammy Louise Jackson a born American Citizen, for twenty three years and live in 384 Pine Street, apt2 Providence, RI 02903, since September of the year 2000 to present, with two Step daughters Syreeta Jackson, Darshell Jackson and a ten years old grandson Daeshawn Jackson all born in the United States before take into custody by Immigration Customs Enforcement (ICE) almost forteen months.

***8.*** On or about August 21 2018, ICE charged Amadeu Mendes Semedo with being deportable, to Cape Verde. He was order removed to Cape Verde by Immigration Judge on July 12 2012. He did not appeal the decision of **IJ** at that time. On or about October 10 2018, detainee file a Motion to Reopen his case, it was deny on January 15 2018 under section 237(a)(1)(B) and 101(a)(15) of INS Act. Detainee file the Motion of Appeal to the BIA and it was dismissed on July 9 2019

On or about July 09 2012, Petitioner was giving a order of removal **in absentia** by the Honorable Immigration Judge D'Angelo in Boston Massachusetts because he arrived half hour late to the Court Hearing or pehaps because he enter the Courtroom after the Immigration Judge roll call. After he arrived to the Court he signed the Court attendance book and he sit in the Courtroom almost from the begninig of the hearing till the end of the Court session. He did not interruped the Immigration Judge during the hearing to let him know that he was there for his hearing, but he assume that the Immigration Judge saw him entering and sit during of the hearing till the end of the session.

After the Court hearing ended, with only the Immigration Judge, the Court Clerk and the Petitioner, in the courtroom the Immigration Judge stood up from his bench, walking toward his chamber, then told the Court Clerk to "see what that gentlemen is here for" then the **IJ** continued to walking into his chamber. Petitioner approach the Court Clerk and let him know that he was there for his Individual Hearing. The Court Clerk told him that the Immigration Judge would not talk to him at that point. Petitioner did make sure that the Clerk knew that he was sit in the Courtroom almost from the begining of the hearing, till the end. The Court Clerk did not inform the Petitioner that he was deported **in absentia** that morning, but instead take all Petitioner's information and advised him that he would receive another Notice to Appear in the mail, which he never received.

***9.*** On or about August 21 2018, ICE took the Petitioner into custody to wait his deportation. Since that time, Petitioner has been in continuously detained by the Immigration Customs Enforcement (ICE) for more then six months. Knowing that the Petitioner received a order of removal on July 9 2018.

**10.** ICE first reviewed Petitioner's detention status on or about November 17 2018 pursuant to post-Order Custody Review procedures at 8 C.F.R. 241.4. In a letter of November 17 2018, ICE refuse and denied Petitioner release by stating that the Petitioner was a flight risk. <u>See</u> Ex. 1.

**11.** On or about February 6 2019, more then six months after the Petitioner's has been in custody, ICE conducted another review. In a letter dated on or about

February 6 2019, ICE informed the Petitioner that the Petitioner would not be released because Petitioner deportation was "reasonably foreseeable" and that ICE is in the possesion of a valid travel documents for the removel of the Petitioner's from the United States and that the Petitioner will remain in custody until ICE can effectuate removed the Petitioner, and that the Petitioner's deportation is imminent. ICE did not specify how many individuals from Cape Verde it had in fact repatriated, or indicate whether it had contacted the Government of Cape Verde with respect to Petitioner's case.

On or about March 21 2019, ICE processed the Petitioner deportation and send the Petitioner to Sulfork County House of Correction in Boston Massachusetts ready to board a plane and get deported from United States to Cape Verde on March 22 2019. The deportation was unsuceful because the Petitioner's case was pending at (BIA) Board Immigration of Appeal and he was granted a stay.

On or Junho 06 2019 three months after, ICE unsucessful and "unreasonable foreseeable" deportation, ICE, conducted another review. In a letter dated on or about june 6 2019, ICE informed the Petitioner that the Petitioner would not be released because Petitioner deportation was "reasonably foreseeable" and that ICE is in the possesion of a valid travel documents for the removel of the Petitioner's from the United States and that the Petitioner will remain in custody until ICE can effectuate removed the Petitioner, and that the Petitioner's deportation is imminent. ICE is still keeping the Petitioner in custody and insisted in continuously indefinite detention. Even after the Court of appeal decided to grant the petitioner a stay.

On or about September 09 2019, after thirteen months detained, for the first time, Petitioner had a physical (face to face) interview with Deportation Officer in the ICE facility in Burlington Massachusetts. In a letter dated September 26 2019, ICE acknowledges the Petitioner's favorable factores his present regarding his ties to the United States "especially his relationship with his wife of twenty three years, his community, and his employment history".

In the same letter dated on September 26 2019, ICE informed the Petitioner that the Petitioner would not be released because Petitioner have a negative factor of misdemeanors traffic offences and that Petitioner's has tampering with GPS monitoring divice thirteen months ago, and Petitioner is a flight risk and that ICE have in their position a valid travel documents since March 2019, and therefore ICE antecipated that it will eventually be able to effectuate Petitioner's removal from United States.That ICE is waiting for the lifting of the current stay of removal issued by **U.S. District Court of Massachusetts,** and that is because Petitioner is a Class Member of ongoing lawsuit called **Calderon Jimenez v. McAleenan** by American Civil Liberty Union (ACLU) of Massachusetts No.18-10225.

Though under <u>Zadvydas</u>, Petitioner has the right to be free from Indefinite detention regardless of whether ICE considers the Petitioner a Flight Risk, Petitioner contest ICE's determination of flight risk.

Petitioner is not a flight risk, because if he released he plans to stayed in the United States with his wife and his family. Petitioner have a pending I-130 application for

Adjust of Status and If he release he will not flee, hide or run from the area and he will comply with all restrictions imposed on him as part of his release.

If he released he will join his family, his community and return to a lawfull employment, and no longer be a financial burden to his family and society. If he released he will be living with his wife and family at 384 Pine Street apt 2 in Providence RI, 02903, and concentrate on working and supporting his family. He never violated any probation, missed any court hearing or ICE appointment. He will abide by any and all conditions.

**12.** In the six months that passed since ICE last try to unsuccessful deported Petitioner's, ICE has not notifield Petitioner of any progress in Petitioner repatriation.

**13.** To Petitioner's knowledge, neither ICE nor Cape Verde have provided any indication that Cape Verde would accept Petitioner in reasonably foreseeable future.

**14.** For all the reason stated within, Petitioner's removal in not reasonabl foreseeble.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

**15.** In Zadvydas, the Supreme Court held that 8 U.S.C 1231 (a)(6), when "read in the light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonable necessary to bring about that alien's removal from the United States. It does not permit indefinite detention" 533 U.S. at 689. A "habeas court must [first] ask whether the detention in question exceeds a period reasonably necessary to secure removal." Id. at 699. If the individual's removal "is not reasonably foreseeble, the court should hold continued detention unreasonable and no longer authorized by stature." Id at 699-700.

**16.** In determining the length of a reasonable removal period, the court adopted a "presumptively reasonable period of detention" of six months. Id at 701. After six months, the government bears the burden of disproving and alien's "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeble future". See Zhou v. Farquharson, 2001 U.S. Dist. LEXIS 18239, *2-*3 (D. Mass. Oct. 19 2001) (quoting and summarizing Zadvydas. Moveover, "for detention to remain reasonable, as the period of post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." Zadvydas, 533 U.S. at 701. ICE's administrative regulation also reconize that the HQPDU has six months period for determing whether there is a significant likelihood of an alien's removal on the reasonably foreseeable future. See 8C.F.R. 241.4(k)(2)(ii).

**17.** Evidence showing successuful repatriation of the other persons to the country at issue is not sufficient to meet the government burden to stablish that an alien petitioner will be deported within the reasonably foreseeable future. Rather, for the government to meet its burden of showing that an alien's repatrition is reasonably foreseeable, it must provide some meanigful evidence particular to the individual's case.

Courts have long recognized the grave consequences of expelling a person from

the United States. The Supreme Court has described deportation as "a drastic measure and at times the equivalent of banishment or exile ... It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty." The expulsion of a detainee may separate him from his home and family and deprive him "of all that makes life worth living."

**18.** Any alien who has been detained beyong the presumptive six months should be released specially when the government is unable to deported the alien's without meanigful evidence that proved beyong a stay by the (BIA) Board Immigration of Appeal.

**CLAIM FOR RELIEF**
**COUNT ONE**
**STATUTORY VIOLATION**

**19.** Petitioner's re-alleges and incorporates by reference paragraphs 1 through 18 above.

**20.** Petitioner's continued detention by the the Respondent violates 8 U.S.C. 1231 (a)(6), as interpreted Zadvydas. Petitioner's six months presumptively reasonably period for continued removal efforts passed more than four months ago. For the reasons outlined above in paragraphs 1 to 17, Petitioner's removal to Cape Verde is not reasonably foreseeable. The Supreme Court held in Zadvydas, that the continued detention of someone after six months where deportation is not reasonably foreseeable in unreasonable and in violation of 8 U.S.C. 1231(a). 533 U.S. at 701.

**COUNT TWO**
**SUBSTANTIVE DUE PROCESS VIOLATION**

**21.** Petitioner's re-alleges and incorporates by reference paragraphs 1 through 20 above.

**22.** Petitioner's continued detention violates his right to substantive due process by depriving him of his liberty interest to be free from bodily restraint. See, e.g. Tam v. INS, 14 F. Supp.2d 1184 (ED. Cal 1998)(aliens retrain substantive due process right).

The Due Process Clause requires that the deprivation of petitioner's liberty be narrowly tailored to serve a compelling government interest. See Reno v. Flores, 507 U.S. 292, 301-02 (1993). While the respondent would have a compelling government interest in detaining petitioner in order to effect his deportation, that interest does not exist if petitioner cannot be deport. The Supreme Court in Zadvydas thus interpreted 8 U.S.C. 1231 (a) to allow continued detention only for a period reasonably necessary to secure the alien's removal because any other reading would go beyong the government articulated interest -- to effect the alien's removal. See Kay v. Reno, 94 F. Supp. 2d 546, 551 (MD. Pa 2000)(granting writ of habeas corpus because petitioner's substantive due process rights were violated, and noting that "If deportation can never occur, the government's primary legitimate purpose in detention-executing removal--is nonsensical").

**COUNT THREE**
**PROCEDURAL DUE PROCESS VIOLATION**

**23.** Petitioner re-alleges and incorporates by reference paragraphs 1 through 22 above.

**24.** Under the Due Process Clause of the United States Constitution, an aliens is entiled to a timely and meaningful opportunity to demonstrate that he should not be detained. The Petitioner's in this case has been denied that opportunity as there is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever made appeal a custody decision that Zadvydas.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prayers that this Court grant the following relief:

**1)** Assume jurisdiction over this matter;

**2)** Grant Petitioner a writ of Habeas Corpus directing the Respondent to immediately release the Petitioner from custody, under reasonable condition.

**3)** Order Respondent to refrain from transfering the Petitioner out of the jurisdiction of the ICE Boston District Director during the pendency of these proceedings and while the Petitioner remains in Respondent custody;

**4)** Recommended that Petitioner Semedo's Habeas Petition, to the extent he claimed that his detention by ICE has prolonged for an unreasonable length of time, be denied.

**5)** If the Court does not order immediate release, then a detention hearing at which the government is required to justify the Petitioner's detention by proving by clear and convincing evidence (1) the predicate facts necessary to trigger a proper basis for detention; (2) that the Petitioner is a danger to others or a flight risk; and (3) even if so, that no condition or combination of conditions will reasonably assure the Petitioner's future apperance and the safety of the community; and

**6)** Grant any other futher relief which this Court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct.

Respectfully submitted this 30 day of September, 2019

**Detainee**
Amadeu Mendes Semedo

________________________

A# 200 809 789
Bristol County Sheriff Office
400 Faunce Corner Road
North Dartmouth MA, 02747
ICE-A

**CERTIFICATE OF SERVICE**

**I, Amadeu Mendes Semedo**, certify that a true copy of the above document (Petition for Writ of Habeas Corpus) was served on September 30 2029, upon the following:

U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

**Detainee**
Amadeu Mendes Semedo
A 200 809 789
Bristol County Sheriffs Office
400 Faunce Corner Road
North Dartmouth MA 02747